# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

TERRY G. PRIOR,        )
                               )
      Plaintiff,       )
                               )     Case Number:
v.                      )     2:17-cv-01870-JEO
                               )
NORFOLK SOUTHERN    )
CORPORATION,       )
                               )
      Defendant.     )

## MEMORANDUM OPINION

In this case, Plaintiff Terry G. Prior claims that Defendant Norfolk Southern Railway Company, Inc. ("Norfolk Southern")[1] terminated his employment because of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. (Doc.[2] 1). The cause now comes to be heard on Norfolk Southern's motion for summary judgment. (Doc. 19). Upon consideration, the court[3] concludes that the motion is due to be granted.

---

[1] The Complaint identifies the defendant as "Norfolk Southern Corporation," but in answering and responding thereafter, the defendant states that its correct name is "Norfolk Southern Railway Company, Inc." (Doc. 19 at 1).

[2] References to "Doc(s) ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the clerk. Unless otherwise noted, pinpoint citations are to the page of the electronically-filed document in the court's CM/ECF filing system, which may not correspond to pagination on the original "hard copy" presented for filing.

[3] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed. R. Civ. P. (Doc. 13).

# I.    SUMMARY JUDGMENT STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a defendant is authorized to move for summary judgment on the claims asserted against it.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. Proc. 56(c)(1)(A), (B).  In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor.

*Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  At

summary judgment, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue

for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.    BACKGROUND[4]

Plaintiff is African-American.  He was hired by Norfolk Southern on

January 17, 2005.  During his employment, Plaintiff worked as a "Carman" at

Norfolk Southern's Norris Yard in Irondale, Alabama, inspecting and repairing

railroad cars.  Norfolk Southern terminated Plaintiff's employment on December

30, 2015, as discipline for several alleged work rule violations occurring on a shift

he worked in October 2015.  Plaintiff admits his guilt with respect to at least most

of that alleged malfeasance.  The crux of his claim in this court, rather, is one of

racially disparate discipline, based principally upon an assertion that Norfolk

Southern accused other, white employees of similar misconduct but did not fire

them.

Prior to October 2015, Plaintiff had been involved in four disciplinary

events.  First, on July 26, 2010, following an investigative hearing on June 29,

---

[4] The summary in this background section is taken from the court's review of the evidentiary
materials in the court file and the pleadings where uncontested.  While the parties dispute some
of the facts, the evidence is presented here in the light most favorable to Plaintiff as the non-
movant, with reasonable inferences drawn in his favor, as required by the applicable standard of
review.  Accordingly, these are the facts for purposes of the instant motions only; they may not
be the "actual" facts.

2010, Plaintiff was determined to have been sleeping on duty on May 31, 2010. For that infraction he was given a 30-day deferred suspension. Second, on April 16, 2014, Plaintiff was again found to be sleeping on duty, for which he was given a 15-day deferred suspension. Third, Plaintiff received a written discipline report on August 6, 2015, for failing to complete a proper brake test on July 28, 2015, a "minor" offense. And fourth, on September 8, 2015, Plaintiff was issued another written disciplinary warning for "improper performance of duty, failure to detect previously tagged (obvious) safety appliance damage"[5] on August 31, 2015. He was also issued a 30-day deferred suspension for that "serious" infraction.

The discipline immediately resulting in Plaintiff's discharge, however, was based on alleged work rule violations occurring on the night of October 27-28, 2015. At that time, Plaintiff was inspecting a train with three other carmen: Jabrell Peterson, who is black, and Tommy Jerrell and Lloyd Salter, who are both white. Based on their work on that shift, disciplinary charges were brought against both Plaintiff and Peterson, but not, apparently, against Jerrell or Salter. The alleged violations against Plaintiff and Peterson were laid out in a letter dated November 5, 2015, written by Norfolk Southern's Senior General Foreman Thomas Wynne, Jr.,

---

[5] The court recognizes that some of the work rule violations with which Norfolk Southern charged Plaintiff and other employees involve jargon and technical terms related to train inspections that may not make the exact substance of the alleged misconduct fully or immediately apparent to a layman. However, the court will not discuss the specifics of such infractions except to the extent necessary to resolve Norfolk Southern's motion for summary judgment.

who is white.  As it relates to Plaintiff, Wynne claimed in the letter that he and

General Foreman Jordan Murphy, also white, observed Plaintiff failing to "call

clear" at a certain track at approximately 12:22 a.m. on October 28th (the "failing

to call clear").  Second, Wynne's letter asserted that Peterson saw Plaintiff sleeping

on duty at about 2:08 a.m.  (the "sleeping on duty").  Third, Plaintiff was alleged to

have failed to conduct a proper brake inspection at approximately 2:26 a.m. (the

"improper brake inspection").  Finally, Norfolk Southern's letter averred that

Plaintiff made four false or conflicting statements regarding matters under

investigation that night.  In this vein, Norfolk Southern alleged that, in response to

questioning by Wynne, Plaintiff had falsely claimed to have "walk[ed] the brakes

off" on the train under inspection (the "walk-the-brakes-off false statement").

Norfolk Southern also identified that, when asked by Mechanical Supervisor

Ledell Miles, who is black, "Why was the (bleed rod) defect not reported during

the initial inspection," Plaintiff gave a false answer by stating, "The bad order car

(CLIX 298037) only had one bad order ticket on it" (the "bad-order-ticket false

statement").  Next, Norfolk Southern charged that Wynne had asked Plaintiff

whether he had "check[ed] the pressure at the rear for initiating a brake

application," to which Plaintiff had answered falsely, "Peterson had checked the

pressure three times" (the "brake-pressure false statement").  And lastly, the letter

addressed Plaintiff's responses to a question by Wynne regarding whether Plaintiff

and Peterson had "inform[ed] the supervisory gang lead the track had been completed prior to detecting the bad order car (CLIX 298037)." Particularly, Wynne's letter recited that Plaintiff had initially answered that the "track had not been released to Transportation" at that time, but he "later changed his story" by saying that it had been so released (the "track-release false statement").

On December 3, 2015, Norfolk Southern held an investigative hearing into the charges against Plaintiff. The hearing officer presiding at that proceeding, David G. Price, is white, while the assistant hearing officer, Terry Williams, is black. With two exceptions, Plaintiffs now admits his guilt on the charges arising from his shift on the night of October 27-28, 2015. Specifically, Plaintiff only denies the charges that he failed to call clear and that he made the break-pressure false statement. Ultimately, however, Price determined that Plaintiff was guilty of all charges and dismissed Plaintiff from his employment with Norfolk Southern on December 30, 2015. The parties also appear to agree that Peterson's employment was likewise terminated based on the disciplinary charges against him arising from the night of October 27-28, 2015. (*See* Doc. 21 at 16 ¶¶ 42, 43; Doc. 26 at 1, 12 ¶¶ 42, 43; Doc. 28 at 4).

On February 2, 2016, Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff claimed therein that Norfolk Southern had unlawfully discharged him

because of his race.  In support, Plaintiff identified four white employees, namely, Jerrell, Salter, Chris Ham, and Todd Pelkey, that he claimed to have been accused of like misconduct but had been retained.  On August 9, 2017, the EEOC dismissed Plaintiff's charge and issued him a right-to-sue notice.

Plaintiff filed this action on November 7, 2017.  In his complaint, Plaintiff brings claims under Title VII and § 1981 founded on an allegation that Norfolk Southern terminated his employment because of race.  Following the close of discovery, Norfolk Southern filed its instant motion for summary judgment.  (Doc. 19).  That motion is accompanied by an evidentiary submission (Doc. 20) comprised of Plaintiff's deposition (Doc. 20-1) and the exhibits thereto (Doc. 20-2), as well as a supporting brief (Docs. 21, 22-1).  Plaintiff has filed a brief opposing the motion (Doc. 26), plus an affidavit from Pelkey (Doc. 27-3).  Norfolk Southern fired the last shot with its reply brief.  (Doc. 28).  The motion for summary judgment is thus ripe for decision.

## III.    DISCUSSION

### A.    Discriminatory Discharge under Title VII and § 1981

Plaintiff claims that Norfolk Southern is liable on the theory that it terminated his employment because of race.  These claims are brought pursuant to both Title VII and 42 U.S.C. § 1981.  In relevant part, Title VII makes it an "unlawful employment practice" for an employer to "discharge … or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981, in turn, gives "all persons the same right to make and enforce contracts as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For purposes of the statute, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 thus prohibits a range of material adverse actions in private employment because of race, including discharge. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450-51, 454-55 (2008).

In this circuit, Title VII and § 1981 claims alleging racially discriminatory discharge are treated as parallel causes of action with the same standards of liability and proof. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Accordingly, the court will treat Plaintiff's Title VII and § 1981 claims with a unified analysis. *See id.* To prevail, Plaintiff would have the burden at trial to prove that Norfolk Southern terminated his employment because of race, using either direct or circumstantial evidence of discriminatory intent. *See Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 920-21 (11th Cir. 2018). Plaintiff maintains

that he has both types of evidence.  The court considers his claim of direct

evidence first.

## B.    Direct Evidence

Plaintiff contends he has direct evidence Norfolk Southern fired him because

of race.  In analyzing such claims, the Eleventh Circuit has explained:

> "Direct evidence is 'evidence, that, if believed, proves [the] existence
> of [discriminatory intent] without inference or presumption.' "
> [*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)]
> (first alteration in original) (quoting *Burrell v. Bd. of Trs. of Ga.
> Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  In contrast,
> circumstantial evidence only "suggests, but does not prove, a
> discriminatory motive," *id.*, and may be evaluated under the burden-
> shifting test established in *McDonnell Douglas Corp. v. Green*, 411
> U.S. 792 (1973).  "When a plaintiff proves a case of discrimination by
> direct evidence, application of *McDonnell Douglas* is inappropriate,"
> *Equal Emp't Opportunity Comm'n v. Alton Packaging Corp.*, 901
> F.2d 920, 923 (11th Cir. 1990); *see also Evans v. McClain of Ga.,
> Inc.*, 131 F.3d 957, 961-62 (11th Cir. 1997), and the district court may
> not grant summary judgment "[w]here the non-movant presents direct
> evidence that, if believed by the jury, would be sufficient to win at
> trial ..., even where the movant presents conflicting evidence," *Merritt
> v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting
> *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.
> 1996)).

*Jefferson*, 891 F.3d at 921-22.  However, the Eleventh Circuit has cautioned that

"only the most blatant remarks, whose intent could be nothing other than to

discriminate on the basis of some impermissible factor," are sufficiently clear to

constitute direct evidence.  *Rojas v. Florida*, 285 F.3d 1339, 1342 n. 2 (11th Cir.

2002) (per curiam) (citations and internal quotation marks omitted); *see also*

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("Evidence …
that is subject to more than one interpretation … does not constitute direct
evidence." (citing *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n.2
(11th Cir. 1996)).

In support of his direct-evidence theory, Plaintiff relies on an affidavit sworn
by one of his would-be comparators, Todd Pelkey (Doc. 27-3 ("Pelkey Aff.")).  In
that affidavit, Pelkey relates that Wynne brought charges against him and his
partner, Chris Ham, claiming that he, Wynne, had observed them violate several
work rules while working as carmen in April 2015.  (Pelkey Aff. ¶ 7).  Pelkey says
that, based on these charges, he was "pulled from service," given a waiver of
discipline by the company and a 30-day suspension, with a return to work
thereafter.  (*Id.* ¶ 8).  Other materials in the record confirm that Norfolk Southern
imposed that discipline on Pelkey on May 6, 2015, and that the underlying events
occurred on the night of April 23-24, 2015.  (*See* Doc. 20-2 at 76-77, 82-83).  At
some unspecified time thereafter, Pelkey continues, Wynne lost his management
position and came back to work as a carman on a shift with Pelkey.  (*Id*. ¶ 9).
Pelkey asked Wynne "if there was a reason he came out to watch Chris Ham and
[him] during [their] shift" that resulted in the April 2015 charges.  According to
Pelkey, Wynne answered, "I had to cover myself.  I had to even things up.  I had a
lot of pressure on me from above."  (*Id.*)  Pelkey says he then "told Mr. Wynn[e]

[he] understood what he meant by this comment, seeing that he had fired two black men, so he needed to bring two white men up on charges as well." (*Id.*) Plaintiff would characterize Wynne's statement to Pelkey as direct evidence that Wynne "took discriminatory action against Plaintiff Terry Prior on the basis of his race." (Doc. 26 at 14). The court disagrees.

While Norfolk Southern insists that Wynne will deny having made the alleged statement to Pelkey (Doc. 28 at 2 n.1), at summary judgment the court is bound, of course, to credit Pelkey's testimony on the point. Even so, Plaintiff's direct-evidence argument is a non-sequitur and falls completely flat. For starters, Wynne's statement to Pelkey purports to explain only why he decided to watch and bring disciplinary charges against Pelkey and Ham. The statement makes no mention of Plaintiff or his termination. Indeed, it also does not mention race or identify any other employees or events. As such, it is not even clear that Wynne's statement is even alluding to a racial disparity in discipline, rather than based on, say, some aspect of union politics, workers in different jobs or on different shifts. The statement thus does not amount to an admission by Wynne that Plaintiff was terminated or was subjected to disparate discipline because of his race, as required to constitute direct evidence. *See Allen v. City of Athens*, 937 F. Supp. 1531, 1542 (N.D. Ala. 1996) (wherein Judge Hancock held on similar reasoning that a supervisor's acknowledgment that he had "hired black and female applicants to

avoid claims of race and sex discrimination" was too ambiguous to be direct evidence that the supervisor had otherwise engaged in race discrimination). Indeed, as Norfolk Southern highlights, it is quite impossible that Wynne could have decided to watch or discipline Pelkey and Ham because of Plaintiff's termination or the charges underlying it. That is so because Wynne pursued the charges against Pelkey and Ham in April 2015 while the charges against Plaintiff arose from a shift he worked *some six months later*, near the end of October 2015, and Plaintiff was not fired until the end of December 2015. Wynne obviously could not have been motivated to act against Pelkey and Ham by events that had yet to occur. Plaintiff has no direct evidence to support his claim.

### C.  Circumstantial Evidence

Plaintiff also contends he can prove his claim using circumstantial evidence. In support, Plaintiff relies upon proof related to Norfolk Southern treatment of four white carmen, namely, Tommy Jerrell, Lloyd Salter, Chris Ham and Todd Pelkey. According to Plaintiff, they engaged in similar misconduct to him but were not fired. Norfolk Southern responds by arguing that it is entitled to summary judgment because none of the employees Plaintiff identifies are, Norfolk Southern says, similarly-situated enough to Plaintiff to allow an inference that any difference in treatment is attributable to intentional race discrimination.

It is long established an employer may violate Title VII and § 1981 by subjecting employees of different races to disparate discipline for having committed the same or sufficiently similar offenses, even where the wrongdoing is serious and the employees do not dispute guilt. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 281-83 (1976); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). Thus, a plaintiff may make out a prima facie case of intentional discrimination using circumstantial evidence "that she was treated differently from another 'similarly situated individual-in court-speak, a 'comparator.'" *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc) (citing *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981)). While a Title VII or § 1981 plaintiff alleging disparate treatment need not necessarily identify a valid comparator to prevail, summary judgment in favor of the employer is generally appropriate where the plaintiff fails to present such proof and no other evidence of discrimination is present. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1277 (11th Cir. 2008); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004); *McQueen v. Alabama Dep't of Trans.*, 769 F. App'x 816, 822 (11th Cir. 2019).

In its recent *en banc* decision in *Lewis*, the Eleventh Circuit clarified the standards for assessing whether an employee from outside a plaintiff's protected class qualifies as a viable comparator. In so doing, our court of appeals rejected

prior caselaw that had required a plaintiff to show that his circumstances and those of another employee were "nearly identical."[6] *Lewis*, 918 F.3d at 1218, 1224, 1226, 1229. Instead, the court settled on a somewhat less strict formulation whereby a plaintiff must show that he and another employee outside his class and treated better were otherwise "similarly situated in all material respects." *Id.* at 1218, 1224, 1226. In fleshing out that standard, the *Lewis* court explained that it does not obligate a plaintiff to "prove purely formal similarities," such as that they "had precisely the same title" or "job function." *Id.* at 1227. That said, the court also outlined "the sorts of similarities that will, in the main, underlie a valid comparison," including that, "ordinarily," a similarly situated comparator and the plaintiff "will have engaged in the same basic conduct (or misconduct)," "will have been subject to the same employment policy, guideline, or rule," "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor," and "will share … [an] employment or disciplinary history." *Id.* at 1227-28 (citations and footnote omitted). "In short," the court concluded, "a valid

---

[6] Norfolk Southern repeatedly invokes the "nearly identical" standard in its motion for summary judgment (Doc. 19 at 3), initial supporting brief (Doc. 21 at 2, 19, 21, 24, 25) and reply brief (Doc. 28 at 8, 10). Norfolk Southern can hardly be faulted for doing so, however, as the Eleventh Circuit did not hand down its *en banc* opinion in *Lewis* until nine days after Norfolk Southern filed its reply brief. Nevertheless, a new rule of law generally is retroactively applicable to pending cases. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002) (en banc); *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 847-48 (11th Cir. 2018). And the Eleventh Circuit applied its ruling in *Lewis* to the parties before it, 918 F.3d at 1229-31, and it did likewise thereafter in several cases that had been pending on appeal. *See Cornell v. Brennan*, 2019 WL 2476611, at *2 (11th Cir. June 13, 2019); *Cornell v. Brennan*, 2019 WL 2476611, at *2 (11th Cir. June 13, 2019); *McQueen v. Alabama Dep't of Transportation*, 769 F. App'x 816, 822 (11th Cir. 2019). *Lewis* is thus also to be applied here.

comparison will turn … on substantive likeness" and requires that the plaintiff and a comparator "be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Service, Inc.*, ___ U.S. ___, ___, 135 S. Ct. 1338, 1355 (2015)). With these standards in mind, the court turns to examine the evidence related to the four white employees that Plaintiff identifies as would-be comparators.

### 1. Tommy Jerrell and Lloyd Salter

The court first considers Jerrell and Salter, the two white carmen who were inspecting the train along with Plaintiff and Peterson on the night of October 27-28, 2015. Plaintiff claim that Jerrell and Salter are similarly situated to him on the basis that they allegedly also violated work rules that night, specifically by "riding the breaks" rather than "walking them," but were not disciplined. (Doc. 26 at 15). For reasons explained below, however, neither Jerrell nor Salter qualifies as a valid comparator.

Even if another employee violated the same work rule as the plaintiff and was not punished for it, for the other employee to be deemed similarly situated to the plaintiff requires a showing that the employer was aware of the other employee's misconduct. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n. 5 (11th Cir. 2003); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). While Plaintiff suggests he observed Jerrell and Salter riding the

brakes while inspecting the train, Plaintiff admits that he does not know whether the relevant supervisors, Murphy and Wynne, saw or otherwise had knowledge of the infraction. (*See* Pl. Dep. at 251, 349-50; Doc. 26 at 9, ¶ 34). Plaintiff posits that "Murphy and Wynne were out that night to watch the black employees and did not care what was going on with the white employees," and Plaintiff views Murphy and Wynne's apparent failure to witness Jerrell and Salter riding the brakes as itself evidence supporting his theory. Such reasoning, however, is circular and amounts to speculation insufficient to defeat summary judgment, as Plaintiff has not pointed to evidence reasonably supporting that Murphy or Wynne consciously disregarded Jerrell and Salter's activities or focused on those of Plaintiff and Peterson because of race. Without evidence that Norfolk Southern supervisors were aware of Jerrell or Salter's alleged misconduct, Plaintiff cannot show that they are similarly situated to him even as it relates just to the improper-brake inspection violation.

But even if Jerrell and Salter failed to conduct a proper break inspection, as Plaintiff asserts, and Wynne and Murphy knew about it, that still would not render Jerrell or Salter similarly situated to Plaintiff in all material respects, as required by *Lewis*. The charge of failing to conduct a proper brake inspection was just one of several acts of misconduct for which Plaintiff was charged, found guilty, and dismissed. There is no allegation by Plaintiff, much less any evidence, that Jerrell

or Salter committed any of the other misconduct for which Plaintiff was charged and found guilty, including failing to call clear, sleeping on duty, and making multiple false statements during an investigation.  Nor does Plaintiff point to any evidence that Jerrell or Salter had a similar disciplinary history to him otherwise. Thus, the fact that Norfolk Southern did not fire Jerrell or Salter cannot supply an inference that Plaintiff was subjected to racially-disparate discipline.

### 2.    Chris Ham and Todd Pelkey

Plaintiff also contends that Ham and Pelkey are similarly-situated white employees who received more favorable treatment.  For purposes of a comparator analysis, Ham and Pelkey are linked insofar as they both were accused of multiple work rule violations during a shift they worked together as carmen on the night of April 23-24, 2015.  They also both agreed on May 6, 2015, to accept "30 days actual suspension" as discipline for their alleged wrongdoing and to waive any right to appeal under the collective bargaining agreement.  (*See* Doc. 20-2 at 76-77, 82-83).  Further, the charges against Ham and Pelkey were initiated by Thomas Wynne (Pelkey Aff. ¶ 7), who was also one of the two supervisors who brought the charges against Plaintiff and Peterson for their alleged wrongdoing on the night of October 27-28, 2015, that led to Plaintiff's termination.

For their work on the night of April 23-24, 2015, Ham and Pelkey were each accused of six total violations, with four being the same for each man.  To wit,

Ham and Pelkey were charged with two violations each for failing to properly perform an "airbrake test" on identified sections of two trains. They were also charged with two more violations each for having "falsified the Car Inspector's original train record" by indicating thereupon that they "had inspected" railcars on those trains. Ham's remaining two violations were based on his being seven minutes late to work and then falsely representing on his sign-in sheet that he had been on-time. Pelkey's other two violations were for his "carrying and/or using a personal cell phone" while on duty and for having "used profane and/or vulgar language." Again, neither Ham nor Pelkey was terminated for these violations; instead, each agreed to accept a 30-day suspension.

Before April 2015, Ham had been accused of two offenses. First, in December 2013, he was found sleeping on duty. (*Id*. at 74). Then, in November 2014, he was cited for a "minor" offense for failing "to ensure a proper coupling while shoving [a] freight car with [a] shuttle wagon … causing the B-end of [a] car to derail." (*Id*. at 75). In turn, Pelkey had had three disciplinary episodes prior to April 2015. In May 2013, he was cited for a "serious offense" of "excessive absenteeism." (*Id*. at 78-79). Next, in December 2013 he was deemed to have been sleeping on duty. (*Id*. at 80). And finally, in August 2014, was charged with a "minor" offense arising out of a "vehicular accident causing minor damage" to a company truck. (*Id*. at 81).

Upon consideration, the court concludes that the evidence is insufficient to allow a determination that either Ham or Pelkey was similarly situated in all material respects to Plaintiff. At the outset, the court assumes that Plaintiff is correct that a jury could reasonably view Ham and Pelkey being cited for violations on the night of April 23-24 based on failures to properly perform "airbrake tests" and having falsified written records by indicating that they "had inspected" certain railcars as comparable misconduct to Plaintiff's failure on the night of October 27-28 to properly perform a "brake inspection" and making a false statement thereafter to Wynne to the effect that he had performed a proper inspection. That is, at least on the face of things, it appears that Plaintiff, Ham, and Pelkey were each accused of failing to perform substantive duties designed to ensure the proper operation of train brakes and of then attempting to cover up that failure by making false statements, either verbally or in writing. But as further explained below, Plaintiff has not presented evidence reasonably supporting that Ham or Pelkey's other offenses in April 2015 are sufficiently like those Plaintiff committed in October 2015, especially in light of the employees' respective disciplinary histories.

First, in addition to the aforementioned charge of making a false statement in relation to his performance of the brake inspection on the night of October 27-28, 2015, Plaintiff was also charged with making three other false statements that night

to Norfolk Southern personnel on separate and discrete matters during an investigation. Those related to why a defect on one car had not been found during an initial inspection, whether there had been a pressure check for a brake application, and whether a certain track had been "released" at a given time. By contrast, while Ham and Pelkey were alleged to have falsified reports about having performed proper airbrake testing on April 23-24, 2015, they were not deemed to have made a similar number or type of false statements as Plaintiff did on October 27-28.

Plaintiff was also found guilty of sleeping on duty on October 27-28. That was his *third* such offense, which Norfolk Southern classifies "serious."[7] In comparison, Ham and Pelkey had been disciplined only once each for sleeping on duty, both in December 2013, and neither was accused of a repeat of the offense on the night of April 23-24. Finally, Plaintiff was also found guilty of failing to call the track clear upon the completion of an inspection on the night of October 28th, whereas neither Ham nor Pelkey was accused of such an infraction. Plaintiff highlights that Pelkey and Ham did admit guilt to other offenses on the night of April 23-24 that he was not accused of. That's true: Ham acknowledged being seven minutes late for that shift while indicating on his sign-in sheet that he had been on time, and Pelkey admitted to carrying or using a personal cell phone on

_____
[7] Norfolk Southern generally classifies offenses, in increasing level of severity, as "minor," "serious," or "major." (*See, e.g.*, Doc. 20-2 at 35).

duty and to using profanity. However, Ham's time card issue and Pelkey's infractions related to use of a cell phone and foul language are not on their face similar to Plaintiff's offenses of sleeping on duty, failing to call the track clear, and making multiple false statements during an investigation. Nor has Plaintiff referred to the court to evidence that Norfolk Southern might have treated his offenses as like those admitted by Ham and Pelkey. In the end, therefore, the evidence does not support that Ham or Pelkey is a proper comparator. And because there is no other substantial evidence that anyone involved in the decision to terminate Plaintiff's employment discriminated on the basis of race, the court concludes that Plaintiff cannot make out a prima facie case of disparate discipline.

## IV. CONCLUSION

Based on the foregoing, Defendant Norfolk Southern's motion for summary judgment (Doc. 19) is due to be **GRANTED**. A separate final order will be entered.

**DATED**, this 30th day of July, 2019.

_____
JOHN E. OTT
Chief United States Magistrate Judge